**UNITED STATES of America,
Plaintiff-appellee,**

v.

**Burt Steven MIKKA,
Defendant-appellant.**

**No. 78–1492.**

United States Court of Appeals,
Ninth Circuit.

Nov. 13, 1978.

---

**3.** Sections 502(a)(1)(B), (e) and (f); 29 U.S.C. §§ 1132(a)(1)(B), (e) and (f).

**4.** 29 U.S.C. § 1132(g).

**5.** 29 U.S.C. § 185 *et seq.*

Eugene R. Bracamonte, Asst. U. S. Atty., Tucson, Ariz., for defendant-appellant.

Tom O'Toole, Federal Public Defender, Tucson, Ariz., for plaintiff-appellee.

Before MERRILL and CHOY, Circuit Judges, and TANNER,* District Judge.

CHOY, Circuit Judge:

This is an appeal from a conviction for possession of a firearm by a felon in violation of 18 U.S.C. App. § 1202(a)(1).[1] We affirm.

In July, 1977, appellant was acquitted in state court on charges of armed robbery. In January, 1978, appellant was indicted by a federal grand jury on three counts of possession of a firearm by a felon. The Government stipulated that the firearms involved in the state armed robbery trial were the same firearms referred to in the federal indictment. Following a jury verdict of guilty on all three counts, appellant successfully moved to dismiss two of the three counts. He now appeals his conviction on the remaining count.

### I. *Petite Policy*

■ Appellant argues that his indictment on federal charges contravened the Department of Justice policy, known as the Petite policy, which provides:

---

* The Honorable Jack E. Tanner, United States District Judge for the Western District of Washington, sitting by designation.

1. Section 1202(a)(1) provides:

     Any person who has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony . . . and who receives, possesses, or transports in commerce or affecting commerce . . . any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

No Federal case should be tried when there has been a state prosecution for substantially the same act or acts without a recommendation having been made to the Assistant Attorney General demonstrating compelling Federal interests for such prosecution.

United States Attorney's Manual § 9–2.142.

We disagree. The Supreme Court has recently noted:

In response to the Court's continuing sensitivity to the fairness implications of the multiple prosecution power, the Justice Department adopted the *Petite* policy . . . to limit the exercise of the power to bring successive prosecutions for the *same offense* . . ..

*Rinaldi v. United States*, 434 U.S. 22, 28–29, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977) (footnote omitted; emphasis added). The Court found the identity of charges necessary to invoke the Petite policy given that the defendant had been charged in state court with, *inter alia*, conspiracy to commit robbery and in federal court with conspiracy to commit robbery and the substantive crime of robbery. *Id.* at 23 nn. 2 & 3, 98 S.Ct. 81.

In the present case, Mikka was not prosecuted in state and federal court for the same offense. The state charged armed robbery while the federal indictment charged possession of a firearm by a felon. These charges lack the identity found sufficient in *Rinaldi* and other Supreme Court decisions [2] to fall within the Petite policy.[3]

## II. *Collateral Estoppel and Double Jeopardy*

█ Appellant next argues that the doctrine of collateral estoppel, held by the Supreme Court to be part of the fifth amendment protection against double jeopardy, applies here and bars relitigation of matters decided by state court. We need not determine if collateral estoppel would extend to the issues litigated in federal court, however, because the double jeopardy provisions of the fifth amendment are not implicated by state and federal prosecutions even for identical offenses involving identical issues. *Abbate v. United States*, 359 U.S. 187, 189–96, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); *United States v. Cordova*, 537 F.2d 1073, 1075 (9th Cir.), *cert. denied*, 429 U.S. 960, 97 S.Ct. 385, 50 L.Ed.2d 327 (1976); *United States v. Crosson*, 462 F.2d 96, 103 (9th Cir.), *cert. denied*, 409 U.S. 1064, 93 S.Ct. 569, 34 L.Ed.2d 517 (1972).

## III. *Prosecutor's Argument to Jury*

Appellant contends that the prosecutor committed prejudicial error during argument to the jury by impermissibly expressing his personal opinion on the veracity of a witness[4] and by making inflammatory remarks.[5]

---

**2.** *See, e. g., Watts v. United States*, 422 U.S. 1032, 1032, 95 S.Ct. 2648, 45 L.Ed.2d 688 (1975), *vacating United States v. Watts*, 505 F.2d 951 (5th Cir. 1974) (state charges including carrying concealed weapon; federal charge of possession of unregistered firearm); *Hayles v. United States*, 419 U.S. 892, 892, 95 S.Ct. 168, 42 L.Ed.2d 136 (1974), *vacating United States v. Hayles*, 492 F.2d 125 (5th Cir. 1974) (state charge of robbery; federal charge of bank robbery). In both these cases as in *Rinaldi*, the Government acknowledged its failure to follow the Petite policy and requested that the Supreme Court vacate the judgments below.

**3.** Because the Petite policy would not apply in any event to the instant case, we need not consider if the Department of Justice's failure to adhere to that policy would warrant judicial intervention in a proper case.

**4.** The pertinent portion of the transcript reads:
MR. BRACAMONTE: . . . I am wondering, I think what you can infer from that is that Mr. Mikka told him, Mr. Bowling, to tell the jury that the guns were not in his possession but in Mr. Bowling's possession. I think you are entitled to infer that, and I submit to you that Mr. Bowling's testimony today is a lie. I think he was impeached by his prior testimony that he gave on July 8th of this year where he testified, and I read to him several statements that he made at a prior court hearing, and in those prior statements he admitted that it was Mr. Mikka's idea to sell the guns; that he introduced Mr. Brenner to Mr. Mikka as being the person who had the guns.
As I recall the testimony, and I think it is correct, that even Mr. Bowling, on his direct examination, admitted that Mr. Mikka had handled at least one of the firearms. I think that was Exhibit Number 6, which is one of the shotguns. So, he, in fact, admitted on the stand that the Defendant had handled and possessed one of the firearms in question. But even in his prior testimony, which corroborates and is more consistent with Mr. Mikka's own

**5.** See note 5 on page 155.

This court has held that "[i]mproprieties in counsels' arguments to the jury do not require a new trial unless they are so gross as probably to prejudice the defendant, and the prejudice has not been neutralized by the trial judge." *United States v. Parker*, 549 F.2d 1217, 1222 (9th Cir.), *cert. denied*, 430 U.S. 971, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977); *see United States v. Rich*, 580 F.2d 929, 936 (9th Cir. 1978). We cannot say that the prosecutor's remarks were so gross as probably to prejudice the defendant.

█ In *Orebo v. United States*, 293 F.2d 747 (9th Cir. 1961), *cert. denied*, 368 U.S. 958, 82 S.Ct. 402, 7 L.Ed.2d 389 (1962), this court rejected a claim that the prosecutor had impermissibly expressed his personal belief as to credibility and guilt. Our observation there is equally applicable to the instant case:

From the form of the statements . . . and the context in which they appear, we think that reasonably construed they plainly refer only to evidence then properly before the jury. [Citation omitted.] While the District Attorney has special obligations of fairness in seeing that justice is done . . . he is also an advocate having an equally weighty duty of urging upon the jury all legitimate inferences from the evidence . . . in the case. [Citations omitted.]

*Id.* at 749 (footnote omitted). *See Rich*, 580 F.2d at 936; *Parker*, 549 F.2d at 1222–23. We conclude that the allegedly improper assertions of personal belief were not so gross as to require reversal.

█ We reach the same conclusion as to the prosecutor's allegedly inflammatory remarks intimating that appellant's control of firearms permitted him to engage in further illegal conduct. The trial judge promptly interrupted this line of argument and admonished the prosecutor. Though the prosecutor exceeded the bounds of propriety,[6] in view of the context and the trial

---

testimony, he made some statements in his prior court hearing which indicated that Mr. Mikka had possession of the guns; they were his to sell, and that he handled them over at Bowling's house.

MS. DIAMOS: Excuse me, Your Honor. I object to counsel arguing that that was substantive evidence.

THE COURT: Yes. That was introduced for impeachment only.

MR. BRACAMONTE: That is correct Your Honor.

I think, ladies and gentlemen, what you can do, I think, because by his prior statements, I think you can impeach, his credibility has been impeached and that he is not to be believed. He made this story up for your consumption this morning, and I think you ought not to believe it.

MS. DIAMOS: Excuse me, Your Honor. I don't mean to interrupt, but I think counsel is close to arguing his personal beliefs and I object to it.

THE COURT: The record may show your objection. You may continue.

5. The pertinent part of the trial transcript is as follows:

MR. BRACAMONTE: Ladies and gentlemen, this statute is designed to keep firearms away from—it is a statute which is designed to keep firearms away from convicted felons. I ask you, in listening to this testimony and the evidence, don't you believe' that this Defendant had sufficient physical control of these firearms in order to do something dangerous with them, or illegal, which is what the statute was really designed to prohibit. I think you can find that he did have sufficient control of these firearms to participate in that kind of illegal conduct. The statute was designed to discourage people from—

THE COURT: I don't think there is anything before this court as to anything that was going to happen as far as the guns. The charge is only that somebody who has been convicted of a felony is in possession of firearms. That is all that is required, and proof of it, and to argue beyond that without any evidence is improper.

6. We reiterate our warning in *United States v. Perez*, 491 F.2d 167, 174 (9th Cir.), *cert. denied*, 419 U.S. 858, 95 S.Ct. 106, 42 L.Ed.2d 92 (1974):

We recognize that it is difficult to draw a fine line between what is permissible and what is impermissible in closing arguments. It is clear, however, that a prosecutor "should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict." [American Bar Ass'n Standards for Criminal Justice, The Prosecution Function § 5.8(d).] (Footnote omitted.) *See United States v. Fong*, 475 F.2d 189, 190 (9th Cir.), *cert. denied*, 412 U.S. 942, 93 S.Ct. 2785, 37 L.Ed.2d 402 (1973).

judge's warning, the remarks were not so gross as probably to prejudice the defendant.[7]  *See United States v. Fulton*, 549 F.2d 1325, 1327–28 (9th Cir. 1977); *United States v. Greenbank*, 491 F.2d 184, 188 (9th Cir.), *cert. denied*, 417 U.S. 931, 94 S.Ct. 2642, 41 L.Ed.2d 234 (1974).

AFFIRMED.

---

**7.**  This result is particularly compelling because appellant's failure to object to the allegedly inflammatory remarks at trial means that he must demonstrate plain error as to the remarks in order to receive a reversal.  *United States v. Rich*, 580 F.2d 929, 936 (9th Cir. 1978); *United States v. Parker*, 549 F.2d 1217, 1222–23 (9th Cir.), *cert. denied*, 430 U.S. 971, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977);  F.R.Crim.P. 52(b).

