990 F.2d 1266
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jerry Dean WOODS, Petitioner-Appellant,
v.
John AVENENTTI, Warden, et al., Respondent-Appellee.
 No. 92-15551.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 5, 1993.*
Decided April 12, 1993.
 
 Before FARRIS, POOLE and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 This is an appeal from the district court's dismissal of Arizona prisoner Jerry Dean Woods' petition for writ of habeas corpus. The district court had jurisdiction pursuant to 28 U.S.C. § 2254. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 2253. We affirm.
 
 I. Facts
 
 3
 Patrick Joseph Eppler disappeared on June 7, 1981. Subsequently, his father employed a private investigator, Michael Roe, to locate Patrick.
 
 
 4
 Roe's investigation led him to Jeffrey Lange. Lange met with Roe and told him that Patrick had been shot to death by Jerry Dean Woods. After encouragement from his mother and Roe, Lange agreed to accompany Roe to the police station and turn himself in. Lange's statements to the police ensured him a plea agreement to one count of theft and five years probation. One condition of the plea agreement was that Lange testify at Woods' trial. In doing so, Lange testified to the following facts.
 
 
 5
 In June of 1981, Lange visited his mother in Phoenix. During the visit, he met Patrick Eppler and Woods. Lange and Woods agreed to hitchhike to Colorado; Patrick agreed to drive them as far as Flagstaff.
 
 
 6
 The trio left Phoenix at about 3:20 a.m. on June 7, 1981. Patrick was driving. Lange fell asleep along the way. Some time later, Woods nudged Lange awake. Lange noticed that the truck was parked within sight of the freeway. Woods and Patrick were outside near the back of the truck when Lange heard a gunshot. Lange jumped out of the truck in time to see Patrick fall to the ground. When he asked Woods what was happening, Woods told him to shutup and to help load the body into the truck.
 
 
 7
 While driving down the freeway, Woods told Lange to keep his mouth shut because he was "part of it." Several miles down the road, Woods exited the freeway and followed several dirt roads before stopping and unloading Patrick's body. After returning to the freeway, Woods had Lange throw Patrick's billfold out of the truck window. The two proceeded to Colorado.
 
 
 8
 Phoenix police officers Tolford and Penberthy took Woods into custody in late October, 1981. Phoenix detectives Lines and Jesser interviewed Woods at the police station, and Woods confessed to shooting Patrick in the ear with a .22 caliber Derringer.[1] Although Woods indicated that Lange had been in favor of shooting Patrick, at no time did he implicate Lange as the murderer.
 
 
 9
 During Woods' trial testimony, he indicated that it was Lange who shot Patrick, that it was Lange who took Patrick's wallet and threw it out the truck window, and that it was Lange who decided where to dispose of the body. On cross-examination, Woods testified that he had been under the influence of alcohol and pills when Detectives Lines and Jesser initially had interviewed him, but admitted that he had not testified to that effect at a previous bond hearing. Woods also testified that he did not remember having received Miranda warnings.
 
 
 10
 During his trial testimony, Detective Lines testified that he could not detect any influence of drugs or alcohol on Woods at the time of the first interview and stated that Woods never asked for an attorney or invoked his right to remain silent. Officer Shay, who helped arrest Woods, testified to the same.
 
 
 11
 A jury convicted Woods of murder and armed robbery. The Arizona Supreme Court affirmed the convictions. Woods filed a petition for writ of habeas corpus, which the district court dismissed. Woods appeals.
 
 II. Standard of Review
 
 12
 We review de novo the decision whether to grant or deny a petition for writ of habeas corpus. Thomas v. Brewer, 923 F.2d 1361, 1364 (9th Cir.1991). "To the extent it is necessary to review findings of fact, the clearly erroneous standard applies." Id. State court factual conclusions are entitled to a presumption of correctness under 28 U.S.C. § 2254(d) (1988). See Collazo v. Estelle, 940 F.2d 411, 415 (9th Cir.1991) (en banc), cert. denied, 112 S.Ct. 870 (1992).
 
 III. Discussion
 
 13
 A. Woods' Failure to Raise Both His Double Jeopardy Claim and His Challenge to the Jury Instructions at the State Level Resulted in Those Claims Being Procedurally Barred
 
 
 14
 Woods first argues that his Double Jeopardy claim or his jury instruction claim[2] should not be procedurally barred. We disagree.
 
 
 15
 A federal court has the authority to review a federal constitutional claim presented by a state prisoner only if available state remedies have been exhausted. 28 U.S.C. § 2254(a), (b). However, if a federal constitutional claim no longer can be raised because of a failure to follow the prescribed procedure for presenting the issue to the state court, the claim is procedurally barred. See Murray v. Carrier, 477 U.S. 478, 485 (1982); Johnson v. Lewis, 929 F.2d 460, 463 (9th Cir.1991). Once a claim is procedurally barred, a state prisoner may not obtain federal habeas corpus relief absent a showing of "cause and prejudice." Reed v. Ross, 468 U.S. 1, 11 (1984).
 
 
 16
 With respect to the Double Jeopardy claim, the district court pointed out that Woods' brief on direct appeal argued only that his conviction and consecutive sentence for armed robbery violated A.R.S. § 13-116. To the extent that Woods now argues that his armed robbery conviction and sentence violate the Fifth Amendment and due process, those claims are procedurally barred because he has failed to present them to the state courts. See Picard v. Connor, 404 U.S. 270, 278 (1971). Because Woods has not shown "cause and prejudice" for this failing, he cannot obtain habeas corpus relief. Reed, 468 U.S. at 11.
 
 
 17
 With respect to the jury instruction claim, the district court noted that Woods failed to allege this claim on direct appeal and that the Arizona Supreme Court, reviewing the denial of Woods' Petition for Post-Conviction Relief, dismissed the claim as being precluded under Arizona law. Woods' claim is therefore reviewable in the federal court only if he can show "cause and prejudice" for and from failing to raise the claim on direct appeal. Because Woods has made no showing of cause and because he can claim no prejudice--the jury in fact convicted Woods of armed robbery, and not merely attempted armed robbery--he cannot obtain habeas corpus relief. Id.
 
 
 18
 B. Imposition of Consecutive Sentences for Armed Robbery and First Degree Murder Did Not Violate Arizona Law
 
 
 19
 Woods next argues that his armed robbery conviction and consecutive sentences violate A.R.S. § 13-116, which bars consecutive sentencing or double punishment for a single act or omission (in this case, the shooting of the gun). We disagree.
 
 
 20
 Determination of the number of acts or omissions is wholly a matter of state law. Federal courts must defer to state courts for interpretation of state law. Missouri v. Hunter, 459 U.S. 359, 368 (1983); Richmond v. Lewis, 921 F.2d 933, 994 (9th Cir.1990). To state a claim for habeas relief, the petitioner must show that the state court's action was arbitrary or fundamentally unfair. Cooks v. Spalding, 660 F.2d 738, 739 (9th Cir.1981), cert. denied, 455 U.S. 1026 (1982).
 
 
 21
 Under Arizona law, a single use of force will support both a murder element and a robbery element only if the victim was aware of the threat during the robbery. See, e.g., State v. Ferguson, 579 P.2d 559, 565 (Ariz.1978); State v. Rumsey, 636 P.2d 1209, 1212 (Ariz.1981). In this case, the Arizona Supreme Court found the requisite awareness.
 
 
 22
 Correctly perceiving that this [victim awareness] was the precise issue, before imposing consecutive sentences the trial judge made an express finding that the victim had been aware, if only for a brief moment, of the gun in his ear and thus aware of the threat of force.
 
 
 23
 State v. Woods, 687 P.2d 1201, 1214 (Ariz.1984). Because Woods cannot show that the state court's action was either arbitrary or fundamentally unfair, he cannot obtain habeas corpus relief. Cooks, 660 F.2d at 739.
 
 
 24
 C. The Trial Court Did Not Abuse Its Discretion in Not Permitting Woods to Impeach Lange by Cross-Examination About a Specific Instance of Conduct
 
 
 25
 Woods next argues that the trial court abused its discretion in not allowing him to cross-examine Lange regarding an alleged incident of theft by fraud in which Lange was involved. We disagree.
 
 
 26
 We review de novo whether limitations on cross-examination are so severe as to violate the Confrontation Clause. United States v. Vargas, 933 F.2d 701, 704 (9th Cir.1991). When the cross-examination relates to impeachment evidence, "the test as to whether the trial court's ruling violated the [S]ixth [A]mendment is 'whether the jury had in its possession sufficient information to appraise the biases and motivations of the witness.' " Chipman v. Mercer, 628 F.2d 528, 530 (9th Cir.1980) (citation omitted).
 
 
 27
 Before trial, the state trial court ruled that, because there was no conviction of Lange for theft by fraud, that act could not be used under the Arizona Rules of Evidence. At trial and before Lange took the stand, Woods renewed his request to inquire into the theft by fraud. The trial court ruled the act was not probative of truthfulness and, therefore, could not be used in cross-examination to impeach Lange. State v. Woods, 687 P.2d at 1204.[3]
 
 
 28
 The district court concluded that Woods' confrontation rights had not been violated because Woods had ample opportunity to impeach Lange on other grounds, had exploited inconsistencies in Lange's testimony, and had inquired into Lange's plea agreement. We agree. Because it appears clear that the jury had sufficient information to appraise the biases and motivations of Lange, there was no Sixth Amendment violation. Chipman, 628 F.2d at 530.
 
 
 29
 D. The Trial Court Did Not Err by Not Allowing Proof by Extrinsic Evidence of Inconsistent Statements that Were Acknowledged by the Witness
 
 
 30
 Woods next argues that the district court erred in not allowing proof by extrinsic evidence of inconsistent statements made by Lange. We disagree.
 
 
 31
 Evidentiary rulings are sufficient to state a claim justifying federal habeas relief only insofar as they render the trial so fundamentally unfair as to deny the petitioner due process of law. Butcher v. Marquez, 758 F.2d 373, 378 (9th Cir.1985). The district court concluded that Woods had not stated a constitutional claim because he had not identified the substantial differences between the extrinsic evidence and the trial testimony of Lange, because Lange had admitted and testified to the inconsistencies, and because there was no explanation as to how the jury's failure to hear each discrepancy in Lange's statements rendered Woods' trial fundamentally unfair. Because those same failings continue and because the ruling did not and could not render Woods' trial so fundamentally unfair as to deny Woods due process, he cannot obtain habeas corpus relief. Id.[4]
 
 
 32
 E. The Trial Court Did Not Err in Concluding That There Was Not Prosecutorial Misconduct Requiring a New Trial
 
 
 33
 Woods next argues that there were three instances of prosecutorial misconduct--twice during the cross-examination of defendant and once during the prosecutor's closing argument--that mandate a new trial. We disagree.
 
 
 34
 The trial court found two instances of prosecutorial misconduct, but concluded that they were harmless error. A state court's determination of harmless error is reviewed de novo. McKenzie v. Risley, 842 F.2d 1525, 1531 (9th Cir.) (en banc), cert. denied, 488 U.S. 901 (1988). "Harmless error" considers whether it is more probable than not that the prosecutor's conduct materially affected the fairness of the trial. United States v. McKoy, 771 F.2d 1207, 1212 (9th Cir.1985).
 
 
 35
 The first instance of prosecutorial misconduct cited is the prosecutor's cross-examination of Woods about avowals of proof made by defense counsel in opening statement.
 
 
 36
 The Arizona Supreme Court found the questions improper.
 
 
 37
 [D]iscrepancies between counsel's avowals of proof and defendant's later testimony or other evidence are matters appropriate for argument, not for cross-examination. ... Similarly, attempts to clarify counsel's avowals by cross-examination of a witness are improper....
 
 
 38
 Woods, 687 P.2d at 1208. However, the Arizona Supreme Court found that the error was not prejudicial.
 
 
 39
 The district court agreed, particularly considering that the trial court took corrective measures by strongly instructing the jury that comments and avowals made by counsel during opening and closing statements were not evidence to be considered in the case. Because "[o]rdinarily cautionary instructions are sufficient to cure the effects of improper comments," United States v. Davis, 932 F.2d 752, 761 (9th Cir.1991), and because juries generally are presumed to follow such cautionary instructions, Richardson v. Marsh, 481 U.S. 200, 211 (1987), we agree and conclude that any possible prejudice from the comment was obviated or rendered harmless.
 
 
 40
 The second instance of prosecutorial misconduct relates to Woods' examination by two psychiatrists who had examined Woods as part of an earlier competency proceeding. Woods argues that questions propounded at his trial about the psychiatric examinations violated Ariz.R.Crim.P.Rule 11.7(a).
 
 
 41
 Whether the trial court erred by allowing the prosecutor to question Woods about the psychiatric examinations was a matter of state law that the trial court resolved against Woods. Because Woods has not demonstrated that the admission of testimony in response to the prosecutor's question rendered the trial so fundamentally unfair as to deny him due process of law, he cannot obtain habeas corpus relief. Butcher, 758 F.2d at 378.
 
 
 42
 Woods' final claim of prosecutorial misconduct relates to the prosecutor's closing argument, during which the prosecutor told the jury that he "had good reasons" for offering the plea agreement to Lange and also vouched for Lange's credibility.
 
 
 43
 There is no doubt that it is misconduct for a prosecutor to vouch for the credibility of a witness. See, e.g., McKoy, 771 F.2d at 1210-11 ("The rule that a prosecutor may not express his personal opinion of the defendant's guilt or his belief in the credibility of witnesses is firmly established."). Nevertheless, both the Arizona Supreme Court and the district court found that, although the prosecutor's conduct was egregious, the vouching was harmless error. Because it appears that any prejudice resulting from the conduct more probably than not was harmless, we agree and reject Woods' prosecutorial misconduct claims.
 
 
 44
 F. The Trial Court Did Not Err in Using One Form of Verdict on the Murder Charges of Premeditated Murder and Felony Murder
 
 
 45
 Woods next argues that because the jury received only one verdict form on the charges of premeditated and felony murder, he was deprived his "right to be certain that there was a unanimous jury verdict in a capital case," in violation of Arizona Constitution, Art. 2, § 23. We disagree.
 
 
 46
 As the Arizona Supreme Court pointed out in Woods, Article 2, § 23 requires only one form of verdict for first degree murder. Woods, 687 P.2d at 1211 (citing State v. Berndt, 672 P.2d 1311 (1983)). Because Woods cannot show that the state court's action was either arbitrary or fundamentally unfair, he cannot obtain habeas corpus relief. Cooks, 660 F.2d at 739.
 
 
 47
 G. The Trial Court Did Not Admit Woods' Post-Arrest Statements in Violation of His Miranda Rights
 
 
 48
 Woods next argues that the trial court improperly admitted his confession in violation of his Fifth and Fourteenth Amendment rights. Specifically, he argues that police officers questioned him concerning the Eppler murder after he had requested the assistance of counsel and without his first initiating the conversation. We disagree.
 
 
 49
 The primary issue is whether Woods invoked his right to counsel while he was being transported to the police station. If so, all questioning of Woods had to stop and not resume in the absence of counsel, unless Woods initiated further discussions. Edwards v. Arizona, 451 U.S. 477, 484-85 (1981).
 
 
 50
 Woods testified in the state court proceeding that, while sitting in the back of a marked police car, he told the arresting officer "I want to talk to a lawyer." The officer did not respond. Woods testified that when he subsequently inquired "Am I going to talk to a lawyer?", the officer responded "I don't know who you're going to talk to. I just know you're going to be talking to somebody soon." Woods also testified that no one else heard these requests. Woods was then delivered to the Phoenix Police Station where he was interviewed by detectives. The interview led to Woods' confession.
 
 
 51
 If the events occurred as Woods testified, there is no doubt that his requests invoked his Fifth and Fourteenth Amendment rights. See, e.g., Connecticut v. Barrett, 479 U.S. 523, 529 (1987) (requests for counsel are to be given broad effect even when less than all-inclusive). However, after an evidentiary hearing on the matter, the trial court concluded that Woods' credibility was poor and that Woods had failed to carry his burden of showing a denial of his right to an attorney. The district court agreed.
 
 
 52
 A state court's findings of fact are entitled to a presumption of correctness under 28 U.S.C. § 2254(d). Collazo, 940 F.2d at 415. The presumption of correctness can be overcome only by convincing evidence. 28 U.S.C. § 2254(d); Kennick v. Superior Court of California, 736 F.2d 1277, 1281 (9th Cir.1984). Under this standard, the district court concluded:
 
 
 53
 [O]ne consideration weighs heavy in supporting the court's finding; that is, Petitioner's failure to argue his claim prior to filing his Petition for Post-Conviction Relief.
 
 
 54
 As the district court noted, prior to trial, Woods' counsel moved to suppress Woods' confession. At that time, he failed to argue that Woods' Miranda rights had been violated. Moreover, as noted earlier, Woods' counsel testified that he did not remember Woods ever advising him of such, and that, if Woods had, he promptly would have moved to suppress Woods' incriminating statements. Finally, Woods failed to raise this claim either during trial or during his direct appeal, and the record offers no insight into or justification for that failure.
 
 
 55
 Taking all of this into consideration, the district court was persuaded that the state court's finding that Woods' credibility was poor was fairly supported by the record. Because there is no convincing evidence in the record that would contradict that conclusion, we reject Woods' Miranda claim.
 
 
 56
 H. Woods Did Not Receive Ineffective Assistance of Counsel
 
 
 57
 Woods finally argues that he received ineffective assistance of counsel. We disagree.
 
 
 58
 Woods' ineffective assistance of counsel claim is closely related to his Miranda violation claim. Woods claims that counsel failed to investigate his allegations that he twice requested counsel at the time of his arrest and that both requests were ignored by the police. Whether a defendant received ineffective assistance of counsel is reviewed de novo. United States v. Swanson, 943 F.2d 1070, 1072 (9th Cir.1991).
 
 
 59
 A defendant claiming ineffective assistance of counsel must demonstrate (1) that counsel's actions were "outside the wide range of professionally competent assistance," and (2) that the defendant was prejudiced by reason of counsel's actions. Strickland v. Washington, 466 U.S. 668, 687-90 (1984).
 
 
 60
 Even if we had accepted Woods's Miranda claim, he would not be able to sustain his burden of proving that his trial counsel rendered ineffective assistance. The record indicates that Woods failed to inform counsel of the circumstances relating to his requests for counsel prior to trial and prior to his direct appeal. Because counsel cannot be held responsible for Woods' failure to supply him with essential facts, see Dooley v. Petsock, 816 F.2d 885, 891 (3rd Cir.) (counsel cannot be faulted for "failing to raise claims as to which the client has neglected to supply the essential underlying facts ... clairvoyance is not required of effective trial counsel."), cert denied, 484 U.S. 863 (1987), we reject Woods' ineffective assistance of counsel claim.
 
 IV. Conclusion
 
 61
 Accordingly, the decision of the district court is AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Shortly after they had arrived in Colorado, Lange had removed a .22 caliber Derringer from Woods' belongings and discarded it
 
 
 [2]
 Woods claims that by not defining the word "attempt" in its jury instruction regarding attempted murder, the state trial court left the jury unaware of the intent required for the act
 
 
 [3]
 To the extent Woods challenges the trial court's decision under Ariz.R.Evid. 608(b), he challenges state law only and has not demonstrated that the court's decision was either arbitrary or fundamentally unfair. See Cooks, 660 F.2d at 739
 
 
 [4]
 Moreover, the prevailing view is that where the witness unequivocally admits the inconsistencies, further or extrinsic proof of the statement is usually unnecessary and, in most jurisdictions, inadmissible. See generally 3 Weinstein and Berger, Weinstein's Evidence § 613 (1982)