UNITED STATES of America, Appellee,

v.

Donald Wayne RICH a/k/a, Lyle Lunceford, Appellant.

No. 77-2586.

United States Court of Appeals, Ninth Circuit.

May 8, 1978.

Rehearing and Rehearing En Banc Denied Aug. 25, 1978.

---

J. Adam Moore (argued), of Dobbs, Moore & Kirkevold, Yakima, Wash., for appellant.

Robert S. Linnell, Asst. U. S. Atty. (argued), Spokane, Wash., for appellee.

Before MERRILL and ELY, Circuit Judges, and ORRICK,* District Judge.

ELY, Circuit Judge:

In a jury trial, the appellant, Rich, whose real name is Lyle E. Lunceford, was convicted of bank robbery and of assaulting a person or putting into jeopardy the life of a person by the use of a dangerous weapon in the course of committing that robbery. 18 U.S.C. § 2113(d) (1976). He was sentenced to prison for a term of twenty-five years.

The appellant filed a pretrial motion to suppress evidence discovered in searches of a motel room and his apartment and to suppress his incriminating statements that he alleged to be fruits of the searches. The District Court denied the motion. Appellant then filed a motion for a lineup, which was denied, although a lineup was subsequently held pursuant to an agreement of counsel. The lineup later served as the basis for appellant's motion to suppress an in-court identification, and appellant joined in a motion of a codefendant, his brother Robert Lunceford, to depose the govern-ment witnesses who had viewed the lineup. Appellant also filed a motion in limine to prevent the prosecution from referring to his alias on the ground that such reference was prejudicial and irrelevant. All of these motions were denied.

Here, the appellant presents seven issues: (1) that he was denied equal access to the lineup identification witnesses; (2) that there was insufficient evidence that a gun was used in the robbery; (3) that the pre-trial photographic display and lineup were impermissibly suggestive; (4) that motions for a mistrial and new trial should have been granted because of a surprise identification witness, a courtroom outburst of Robert Lunceford, and prosecutorial misconduct; (5) that his admissions should have been suppressed; (6) that "negative hearsay" was improperly admitted at trial; and (7) that evidence found in a motel room was improperly admitted. We affirm.

FACTS

The prosecution presented substantial evidence indicating that appellant, along with another person, robbed the Seattle-First National Bank in Walla Walla, Washington, on February 28, 1977. An eyewitness observed appellant's automobile stop in an alley behind the bank, at which time a man with a sling on his arm alighted from the vehicle and entered the bank. At approximately the same time, a man fitting the above description robbed the bank. Janice Grassi, the bank teller who surrendered the money to the robber, identified appellant as the culprit. Several other witnesses also identified the appellant.

Shortly after the robbery, a local police officer observed appellant while he was riding in his car as a passenger. One Peterson, the owner of a Walla Walla motel, testified that soon after the robbery appellant registered at the motel under an assumed name, writing on the registration card the license number assigned to his automobile. The following morning, March

---

* Honorable William H. Orrick, United States District Judge for the Northern District of California, sitting by designation.

1st, Peterson's wife found the door to appellant's rented room "wide open" and noticed a wine bottle in the room. Having heard news reports of the robbery, she telephoned the police, who then searched the room. Later, agents of the Federal Bureau of Investigation (FBI) identified appellant's fingerprints on the wine bottle.

Appellant's vehicle was spotted in Lewiston, Idaho, on the afternoon of March 1st. Following a period of surveillance, appellant, the driver, was arrested. Robert Lunceford was a passenger in the automobile.

An FBI agent interviewed appellant at the Lewiston jail on March 2nd. Appellant told the agent that his name was Rich, that he had not been in Walla Walla on February 28th, and that he had frequented a Lewiston tavern that afternoon. He also stated that one Dale Olson had borrowed his car on the morning of February 28th.

On March 9th, following appellant's removal to the Eastern District of Washington, FBI agent Harris interviewed appellant, who at that time acknowledged his true identity. Later on the same day, pursuant to appellant's request, Harris again met with appellant. Although refusing to sign a waiver-of-rights form, appellant indicated that he wished to make a statement. He then explained that he and Dale Olson had robbed the bank and that his brother was not involved. Appellant testified at trial that Harris had induced this admission by telling him, the appellant, that the authorities had proof that he had robbed the bank, as well as some evidence that he had committed other crimes, and that his failure to cooperate would result in a prison sentence for his brother.

## DISCUSSION

### I. Access to Witnesses

Counsel for appellant attended the post-indictment pretrial lineup, in accordance with the right guaranteed an accused by the sixth and fourteenth amendments. *United States v. Wade*, 388 U.S. 218, 236–37, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

Each witness, after viewing the lineup, was interviewed by an FBI agent in an adjoining room. The authorities excluded appellant's counsel from these sessions. During the interviews the agent advised the witnesses that they were not required to discuss the case with the defendants or their attorneys. Thereafter certain government witnesses so declined to talk with defense counsel. Appellant then sought to depose the witnesses, but the District Court denied his motion for depositions. Appellant now contends that the combination of events denied him equal pretrial access to witnesses in derogation of his rights to due process, effective assistance of counsel, and confrontation of witnesses.

█ Initially, we note that the absence of appellant's counsel at the post-lineup interviews did not constitute a denial of due process or of a right of access to witnesses. In *Doss v. United States*, 431 F.2d 601, 603 (9th Cir. 1970), we held that an accused does not have a right to be present during conversations between prosecuting authorities and witnesses held during or after a lineup.

█ Likewise, after reviewing the other circumstances of this case, we do not perceive a denial of appellant's access to witnesses. First, the refusal of the trial court to order depositions did not impermissibly interfere with appellant's access to witnesses. In criminal cases depositions are proper only in the very limited circumstances prescribed by Fed.R.Crim.P. 15 and 18 U.S.C. § 3503(a) (1976). Motions under section 3503(a) are considered under the same legal standard as Rule 15 motions. *United States v. Singleton*, 460 F.2d 1148, 1154 (2d Cir. 1972), *cert. denied*, 410 U.S. 984, 93 S.Ct. 1506, 36 L.Ed.2d 180 (1973); H.R.Rep. No. 91–1549, 91st Cong., 2d Sess. 48–49, *reprinted in* [1970] U.S.Code Cong. & Admin.News pp. 4007, 4025. Rule 15 permits the taking of a deposition "[w]henever due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial." In criminal cases, therefore, unlike civil cases, depositions are not allowed merely for the

purpose of discovery. A defendant may depose a witness only if the witness may be unable to attend trial. *See, e. g., In re United States,* 348 F.2d 624, 626 (1st Cir. 1965). In addition, the rule contemplates a party taking the deposition of only his own witness,[1] a requirement that comports with the purpose of preserving testimony.

Appellant, as the movant, did not allege or show the prospective unavailability of the witnesses at trial. Rather, he apparently sought depositions for their value as discovery. Thus, the denial of the motion to depose was well within the discretion of the District Court, if not compelled by the rule itself. *See United States v. Nichols,* 534 F.2d 202, 204 (9th Cir. 1976).

■ A second and more important issue concerns the FBI agent's advice to witnesses that they need not confer with defense counsel. The facts of this case, however, do not demonstrate that the Government improperly influenced its witnesses. Appellant concedes that the government witnesses were not prohibited from discussing the case with defense counsel. It is manifest from the record that the witnesses were told and understood that they had the option to discuss the case with appellant's counsel.

In a similar case, *United States v. Parker,* 549 F.2d 1217 (9th Cir.), *cert. denied,* 430 U.S. 971, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977), we held that a prosecutor's reasonable request did not impermissibly limit appellant's access to the witnesses. There, the prosecutor had asked witnesses not to talk with defense counsel on the day that he intended to reinterview them. *Id.* at 1223.

■ Our present decision should not be interpreted as approving any governmental conduct that has the purpose or effect of discouraging witnesses from cooperating with the counsel of an accused. Although the circumstances of this case cannot support a charge of denial of access to witnesses, we recognize that abuses can easily result when officials elect to inform potential witnesses of their right not to speak with defense counsel. An accused and his counsel have rights of access to potential witnesses that are no less than the accessibility to the potential prosecutors and their investigatory agents. It is imperative that prosecutors and other officials maintain a posture of strict neutrality when advising witnesses of their duties and rights. Their role as public servants and as protectors of the integrity of the judicial process permits nothing less.

## II.  *Use of Dangerous Weapon*

■ The indictment charged appellant, under 18 U.S.C. § 2113(d), with aggravated bank robbery for assaulting or putting in jeopardy the life of a person by the use of a dangerous weapon during the course of the robbery. Appellant maintains that the evidence presented by the Government was insufficient to establish that he had a gun during the robbery. Therefore, he argues that the District Court should have granted his motion for judgment of acquittal. Our review of a denial of a motion for acquittal requires the application of the following test:

> [V]iewing the evidence in a light most favorable to the government as prevailing party, is the court satisfied that the jurors reasonably could decide that they would not hesitate to act in their own serious affairs upon factual assumptions as probable as the conclusions that the defendant is guilty as charged?

*United States v. Kaplan,* 554 F.2d 958, 963 (9th Cir.), *cert. denied,* 434 U.S. 483, 98 S.Ct. 483, 54 L.Ed.2d 315 (1977).

■ During cross-examination, Grassi, the bank teller, testified that, because the robber's arm was in a sling, she had not seen all of the robber's weapon and, although she believed the robber held a gun,

---

1. Rule 15(a) provides that when "it is in the interest of justice that the testimony of a prospective *witness of a party* be taken and preserved for use at trial, the court may *upon motion of such party* and notice to the parties order that testimony of such witness be taken by deposition  .  .  . " (emphasis added).

the barrel she saw protruding from the robber's sling conceivably could have been a pipe.[2] The totality of the evidence, while not unequivocally establishing the existence of a gun, was sufficient to support either a jury finding that appellant used a dangerous weapon or a finding that appellant committed an assault. Appellant failed to object to the instructions allowing the jury to find an aggravated robbery by finding either the use of a dangerous weapon or an assault. If erroneous at all, the instructions were most assuredly not plain error under Fed.R.Crim.P. 52(b). *See, e. g., United States v. Coulter,* 474 F.2d 1004, 1005 (9th Cir.), *cert. denied,* 414 U.S. 833, 94 S.Ct. 172, 38 L.Ed.2d 68 (1973).

### III. *Pretrial Identification*

An FBI agent prepared a display of five photographs from which three witnesses identified appellant as the bank robber. Approximately five weeks later a lineup of six persons was conducted before the same witnesses. Appellant was the only participant in the lineup whose picture had been included in the photographic display. At a suppression hearing the District Court examined the photographic display and pictures of the lineup, concluding that neither identification procedure was impermissibly suggestive. Subsequently, witnesses identified appellant in open court.

■■■ A conviction based on courtroom identifications should be reversed because of pretrial lineups or photographic displays only if such techniques were "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable mis-

identification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). Having viewed the photographs and pictures of the lineup, we agree with the district judge's conclusion that they are not impermissibly suggestive.

Appellant also asserts that the lineup was impermissibly suggestive in that he was the only person in the lineup whose picture the witnesses had previously seen in the photographic display. In *Doss v. United States,* 431 F.2d 601, 604 (9th Cir. 1970), we rejected such a contention, reasoning "we cannot conclude that the whole exceeds the sum of the parts." Moreover, any suggestiveness engendered by the use of different persons in the lineup was doubtless diminished by the lapse of five weeks between the two identification procedures.

### IV. *Motions for Mistrial*

#### A. *Surprise Identification Witness*

■■■ Peterson, the owner of the motel at which appellant allegedly registered after the bank robbery, was unable to identify appellant at the pretrial lineup. Nevertheless, at trial Peterson identified appellant in response to a question by the prosecutor asking for a description of the person who had registered at the motel. The courtroom identification surprised the prosecution as much as it did the defense and did not warrant the granting of the motion.

#### B. *Outburst of Robert Lunceford*

■■■ After testifying as a defense witness, Robert Lunceford, appellant's brother, disrupted the proceedings and, following a warning from the Bench, was removed

---

**2.** On direct examination she stated:

[W]hen he put the note down in front of me, I said "you're kidding", and then he moved his right arm this way, so that I could see what I believed to be a gun concealed in the sling.

. . . . .

[H]e kind of, you know, pointed the gun at me a little.

Her testimony on cross-examination was:

Q. You said you observed what appeared to be a gun; what did it look like, what did you see?

A. All I saw was the end of a gun sticking out, and I could not identify the gun, because I could not see the chamber, it was hidden in the sling, so that I could just see the end of it.

Q. How do you know it was a gun and not something else?

A. Well, I didn't. I mean, I was assuming it was a gun, but it could have been a pipe, I mean, I don't know, I couldn't say that, I cannot tell what kind of a gun it was.

Q. If it was a gun.

A. I wasn't going to worry about that at that point. I felt it was a gun.

from the courtroom. The record indicates that Robert Lunceford gestured to appellant from the rear of the courtroom while appellant was testifying and then started to address the judge as follows: "Your Honor, I would like to, I would like to take——." At that time, upon the request of appellant's counsel, the marshal escorted Robert from the courtroom.

Appellant characterizes his brother's conduct as an "emotional outburst" that prejudiced him in the eyes of the jury. We disagree. Clearly, any disturbance caused by Robert Lunceford did not appreciably affect the jury's perception of appellant. Furthermore, fault for Robert Lunceford's behavior cannot be attributed to the prosecution or to the court. Appellant did not request a cautionary instruction concerning the incident, and the court ordered Lunceford's removal to lessen the impact of the disruption.

### C. Prosecutorial Misconduct

■ Appellant also argues that the prosecutor made improper and prejudicial comments during closing argument, comments that should have required a declaration of mistrial. The plain error standard of review applies because appellant did not timely object to the argument. *See United States v. Parker*, 549 F.2d 1217, 1222–23 (9th Cir.), *cert. denied*, 430 U.S. 971, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977). Appellant first raised his objections on a motion for mistrial after dismissal of the jury. The untimeliness of the objection thus precluded the District Court from curing the effect of any inappropriate comments.

■ Counsel are necessarily permitted a degree of latitude in the presentation of their closing summations. Consequently, "[i]mproprieties in counsels' arguments to the jury do not require a new trial unless they are so gross as probably to prejudice the defendant, and the prejudice has not been neutralized by the trial judge." *Id.* at 1222.

■ The first alleged impropriety concerns the prosecutor's invitation that the jury compare for itself the handwriting on two exhibits. One exhibit contained appellant's signature, and the other was a registration form from Peterson's motel that appellant allegedly had signed. Both exhibits were admitted without objection. Jury examination of handwriting samples ordinarily is proper, whether or not the parties have provided expert testimony on the issue. *United States v. Woodson*, 526 F.2d 550, 551 (9th Cir. 1975); *see* Fed.R. Evid. 901(b)(3). Nonetheless, appellant perceives prejudice in that no comparison of handwriting had been suggested during trial and the prosecutor made his comment during his rebuttal argument. The Government justifies the comment as a response to defense counsel's challenge, made during closing argument, to Peterson's courtroom identification. Without determining whether the prosecutor's argument was in fact appropriate, we conclude that it did not rise to the level of plain error. Substantial prejudice is improbable, inasmuch as the handwriting exhibits were already before the jury, which could have compared the handwriting even had the prosecutor not suggested that they do so.

■ Second, appellant contends that the prosecutor improperly indicated his own personal beliefs in the credibility of witnesses.[3] We find, however, that any prejudice that might have resulted from these comments was neutralized by the prosecutor's own statement that "nothing . . . the attorneys say is evidence, just expressing an opinion to you" and by the court's instruction that the arguments of counsel were not to be considered as evidence.

### V. Admissions

Next, appellant challenges the admissibility of statements he made to FBI agent Harris at the Yakima County jail, arguing that they were fruits of an unlawful search

---

3. The prosecutor referred to appellant's alibi as a "story" and suggested that one reason several prosecution witnesses had not identified appellant at the pretrial photographic display and lineup was their honesty.

of his apartment, which was conducted one week before appellant's interview with Harris. The alleged illegality of the search is that it occurred at night, and although the warrant authorized such a search, the affidavit did not state "reasonable cause" for a nighttime execution. *See* Fed.R. Crim.P. 41(c). None of the items seized in the search was offered at trial, but appellant claims the unlawful search induced him to make his incriminating statement.

█ The record fully supports the determination of the District Court that appellant voluntarily made the statements. After his arrest in Idaho, appellant received *Miranda*[4] warnings and signified his understanding thereof. Appellant requested the meeting with Harris at which he made his admissions. Before appellant issued his statement, Harris again advised appellant of his rights. Although appellant declined to sign a waiver form and stated that he would not answer questions, he expressed a desire to make a statement exonerating his brother from the robbery charge. Appellant argues that his admissions were tainted because Harris told him that the authorities had a strong case against him, which he evidently interpreted as a reference to the evidence seized from his apartment. Even assuming that the admissions could be considered fruits of an illegal search, we conclude that any taint was dissipated by the repeated *Miranda* warnings, the lapse of one week between the search and the admissions, and appellant's initiation of the interview with Harris.

## VI. "Negative Hearsay"

█ FBI agent Snider testified that he had checked various records, which included police records, sheriff's office records, credit records, and city directories, and contacted other sources in Lewiston and that there was no trace of a person named Dale Olson who might have borrowed appellant's automobile. Another Dale Olson, a truck driver, testified that he did not know appellant and was not acquainted with any other person named Dale Olson in the Lewiston area. Appellant objected to both statements on the ground that they constituted "negative hearsay." Olson's statement clearly was not hearsay, as he spoke from his personal knowledge.

Snider's testimony requires a more extended discussion.[5] Case law predating the Federal Rules of Evidence differed on the question whether evidence of the lack of entries in records constitutes hearsay, and if so, whether any exception permitted its admittance. *Compare, e. g., United States v. De Georgia*, 420 F.2d 889 (9th Cir. 1969), *and McClanahan v. United States*, 292 F.2d 630 (5th Cir.), *cert. denied*, 368 U.S. 913, 82 S.Ct. 193, 7 L.Ed.2d 130 (1961), *and Nichols v. United States*, 48 F.2d 46 (5th Cir. 1931), *with Shreve v. United States*, 77 F.2d 2 (9th Cir. 1935), *cert. denied*, 296 U.S. 654, 56 S.Ct. 380, 80 L.Ed. 466 (1936), *and Gravel Prods. Div. of Buffalo Crushed Stone Corp. v. Sunnydale Acres*, 10 Misc.2d 323, 171 N.Y.S.2d 519 (1958).

The Federal Rules of Evidence, however, have resolved the issue. Rule 803(7) treats evidence of the absence of entries in records of a regularly conducted activity as an exception to the hearsay rule:

> Evidence that a matter is not included in the memoranda reports, records, or data compilations, in any form, kept in accordance with the provisions of paragraph (6), to prove the nonoccurrence or nonexistence of the matter, if the matter was of a kind of which a memorandum, report, record, or data compilation was regularly

---

**4.** *Miranda v. Arizona*, 384 U.S. 436, 467–73, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**5.** Snider's precise statement was that he conducted "record checks through the police department, sheriff's office, credit records, city directory records, through other sources, but nobody that I contacted knew another Dale Olson." We cannot tell whether Snider meant that he contacted Lewiston residents to ask if they knew of Dale Olson or whether the "other sources" were unnamed records examined either by Snider or for Snider by other persons. Had Snider clearly testified that other persons said they did not know Dale Olson, there would be an obvious hearsay problem. *But see Nichols v. United States*, 48 F.2d 46, 49 (5th Cir. 1931).

made and preserved, unless the sources of information or other circumstances indicate lack of trustworthiness.

The authors of the Advisory Committee Note explained that such evidence was "probably not hearsay as defined in Rule 801," but the drafters of the Rules opted for a specific treatment of the subject in order to resolve the question definitively in favor of admissibility.

Similarly, Fed.R.Evid. 803(10) excludes from the hearsay rule evidence of the absence of a public record or an entry in a public record. It provides:

To prove the absence of a record, report, statement, or data compilation, in any form, or the nonoccurrence or nonexistence of a matter of which a record, report, statement, or data compilation, in any form, was regularly made and preserved by a public office or agency, evidence in the form of a certification in accordance with rule 902, or testimony, that diligent search failed to disclose the record, report, statement, or data compilation, or entry.

Accordingly, the District Court could correctly admit properly presented evidence that public records and regularly maintained business records did not mention the Dale Olson upon whom appellant relied for an alibi. Such evidence would tend to prove the nonexistence of such a person, but would not, of course, conclusively determine the issue. The sole difficulty lies in the adequacy of the foundation. The exceptions to the hearsay rule for both business and public records are grounded on the high probability of their accuracy. Such records are maintained regularly and systematically by persons having a duty to make accurate records and are relied upon in the course of daily operations. To merit judicial reliance on the contents of records, it is necessary that the proponent of particular records establish the trustworthiness of those records.

Thus, under Fed.R.Evid. 803(6) business records are admissible only if "the custodian or other qualified witness" testifies that the records were "kept in the course of a regularly conducted business activity, and . . . it was the regular practice of that business activity to make the [record]." Rule 803(7), which governs admission of evidence of the absence of entries in business records, does not specifically require the testimony of a custodian or another qualified witness. For the purpose of our opinion here, we assume, without deciding, that such a foundation is a necessary predicate to the admission of evidence of the absence of entries and that this requirement was not met. *See* 4 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 803(7)[01] (1977).

In contrast, the hearsay exception for evidence of the absence of information in public records, embodied in Rule 803(10), expressly provides a foundation requirement. Either a certificate in compliance with Fed.R.Evid. 902 indicating "that diligent search failed to disclose the record" or testimony to that effect will suffice. No Rule 902 certificate was presented for the public records, and FBI agent Snider did not testify that any of his record searches were conducted in a diligent fashion.

Appellant, however, made no objection whatsoever on the ground that a foundation was lacking. He only objected that the evidence was negative in form and was hearsay. As noted earlier, the Federal Rules of Evidence eliminate this type of objection, and the District Court properly overruled appellant's objection. Accordingly, our inquiry is limited to the question whether the prosecutor's abdication of his responsibility to lay a convincing foundation amounts to plain error under Fed.R. Crim.P. 52(b). Generally, under that standard reversal follows "only in those very exceptional circumstances where . . . necessary in order to prevent a miscarriage of justice or to preserve the integrity and reputation of the judicial process." *United States v. Segna*, 555 F.2d 226, 231 (9th Cir. 1977) (citing Ninth Circuit cases). An assessment of plain error depends not upon the obviousness of the error but upon its prejudicial impact on the determination of guilt. Looking as the entire case, reversal

is appropriate if it is highly probable that the unobjected-to error materially affected the jury's verdict. *Id.*

Applying that rigorous standard, we decline to invoke the plain error doctrine. To find the requisite likelihood of substantial prejudice, we believe it necessary that there be some evidence suggesting the unreliability of the records underlying the improperly introduced evidence. *See United States v. Rudinsky,* 439 F.2d 1074, 1076 (6th Cir. 1971). *See also United States v. Valdivia,* 492 F.2d 199, 208 (9th Cir. 1973), *cert. denied,* 416 U.S. 940, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974); *United States v. Pacheco-Lovio,* 463 F.2d 232, 234 (9th Cir. 1972) (per curiam). Appellant has never challenged the accuracy of the records of which Snider testified, and nothing in the record on appeal reveals a lack of trustworthiness. Absent any hint that the records were erroneous or untrustworthy, we cannot conclude that the lack of a foundation significantly prejudiced appellant.

VII. *Evidence Found in Motel Room*

Appellant also challenges the admissibility of evidence found in a room at Peterson's motel the day after the robbery. As we have mentioned, Mrs. Peterson, the motel owner's wife, found a wine bottle after the occupants had left the room, with the door open, and after their vehicle had departed and did not return. She then notified the police and gave them the bottle. Because a private individual conducted the "search" after abandonment of the room, the evidence was admissible.

AFFIRMED.