OPINION OF THE COURT
Dominic R. Massaro, J.
The question presented is whether a defendant should be precluded from an otherwise acceptable evidentiary submission but for a governmental failing. Based on the court’s analysis, such a ruling would offend fundamental tenets of fairness inherent in criminal jurisprudence.
Upon trial of this action, the defense sought to introduce *617 into evidence a New York City Police Department complaint report, commonly known as form UF-61. The document was prepared by a civilian employee of the police department, based upon information provided to that employee by a police officer. The signature at the bottom of the UF-61 was that of another police officer, not that of the officer who provided the information.
Upon examination of said reporting officer, it was revealed that the common practice is for police officers to sign a blank UF-61, so that a civilian employee can later fill out the form without the necessity of having the officer/informant present to affix his signature. By definition, the practice likewise eliminates subsequent review of the form for completeness and correctness. It can be surmised that, in the instant case, the civilian employee unwittingly used a form that had been signed in blank by an officer uninvolved in the case before the court, and proceeded to fill in the reported information appertaining hereto.
When the informing officer was asked to view the document while testifying, he stated that the signature was not his and that he had no independent recollection of the relevant facts asserted therein. Accordingly, the People opposed admission of the UF-61, stating that a foundation is wanting in view of the erroneous signature and/or the witness’ lack of recollection of the facts even after review.
Therefore, preclusion from introducing what could prove to be a vital piece of exculpatory evidence — namely, a description of the perpetrator — because of governmental failure to follow proper procedure(s) in the preparation of an official document is at hand. New York courts have yet to report in this factual situation. To answer the question then, it is necessary to examine the business records exception to the hearsay rule, as well as related exceptions to the rule against hearsay.
THE BUSINESS RECORDS EXCEPTION
The business records exception to the rule against the admission of hearsay has its origin in the "shop book” rule of the English common-law courts (see generally, 5 Wigmore, Evidence § 1518 [Chadbourn rev 1974]). Since most shopkeepers maintained their own books and records, the shop book rule circumvented the harsh common-law barring of a party from appearing as a witness in his own behalf. Early application of the shop book exception provoked criticism regarding *618 the self-serving nature of such evidence. This criticism, apparently coupled with abuse of the rule in practice, prompted statutory restrictions on the use of shop books. More specifically, a 1609 statute was enacted limiting the use of a party’s shop books to a period of one year after a debt was created, except where a bill of debt was given or where the transaction was between merchants and tradesmen (7 Jac I, ch 12 [1609]).
During the eighteenth century, the English common-law courts began to allow greater use of shop books as evidence. "At first, this permitted only the use of regular entries in the books of a party by a deceased clerk, but this was expanded to cover books regularly kept by third persons who had since died. By 1832 the doctrine was firmly grounded and its scope was held to include all entries made by a person, since deceased, in the ordinary course of his business” (McCormick, Evidence § 305 [3d ed 1984]). In the American colonies, the limitations on the admission of shop books, based upon Dutch practice and the English statute of 1609, continued in force with even more severe restrictions. It was not until the early part of the nineteenth century that the American equivalent of the English general exception for regular business entries by deceased persons began to emerge (McCormick, op. cit., § 305).
Interestingly, the shop book rule continued to exist even after the disqualification of a party to testify was removed by statute (Smith v Smith, 163 NY 168 [1900]). In New York the common-law shop book rule applied only to transactions in the ordinary course of buying and selling or the rendition of services, and therefore did not apply to cash loans or other cash transactions (Smith v Rentz, 131 NY 169 [1892]); nor could the books of a corporation be admitted under the shop book rule (Congdon & Aylesworth Co. v Sheehan, 11 App Div 456 [1896]).
In addition to the shop book rule, the New York common-law courts fostered the development of the parallel regular entries rule. This rule admitted business entries, even as against a third person, provided that it was made in the regular course of a business or profession, and was made at or near the time that the event occurred. Further requirements were that the person who recorded the event now be deceased, that he had personal knowledge at the time of the entry, and that he had no motive to deceive (see generally, Leask v Hoagland, 205 NY 171 [1912]).
*619 The justification for the admission of regularly kept business records is based upon grounds similar to all of the hearsay exceptions, namely, that such records bear a great degree of reliability. Such reliability is furnished by the fact that "in practice regularly kept records have a high degree of accuracy (as compared to other memoranda). The very regularity and continuity of the records are calculated to train the recordkeeper in habits of precision; if of a financial nature, the records are periodically checked by balance-striking and audits; and in actual experience the entire business of the nation and many other activities function in reliance upon records of this kind” (McCormick, op. cit., § 306).
Under present law, regularly kept business records are generally admissible. In New York, the rule has been codified as CPLR 4518 (a), which provides: "Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible in evidence in proof of that act, transaction, occurrence or event, if the judge finds that it was made in the regular course of any business and that it was the regular course of such business to make it, at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter. All other circumstances of the making of the memorandum or record, including lack of personal knowledge by the maker, may be proved to affect its weight, but they shall not affect its admissibility. The term business includes a business, profession, occupation and calling of every kind.”
PUBLIC RECORDS
Similar to the rule regarding business records is the analogous rule related to public records and reports. Essentially, the hearsay exception for public records applies to three distinct categories of records and reports (see generally, Fed Rules Evid, rule 803 [8]). The first category of public records includes records of activities of the office itself. The second group consists of matters observed pursuant to duty. The third category relates to investigative reports, such as the document at issue in the instant case.
Investigative reports, by their very nature, are generally not the product of firsthand knowledge on the part of the maker. Thus, in essence, they constitute double hearsay. The lack of firsthand knowledge tends to make them less reliable than *620 other kinds of official reports. Recognizing this fact, some courts and Legislatures have moved to prohibit the use of investigative reports against the accused in a criminal case. Indeed, rule 803 (8) (C) of the Federal Rules of Evidence likewise excludes the use of such evidence against the accused.
The Advisory Committee Notes to Federal Rules of Evidence, rule 803 (8) (C) indicates that the reason for excluding the use of investigative reports against an accused is because of "the almost certain collision with confrontation rights which would result” (Advisory Comm on Rules, Notes, reprinted following 28 USCS 803, at 799; US Const 6th Amend; NY Const, art I, § 6). Moreover, rule 803 (8) (B), while allowing admission of documents related to "matters observed pursuant to duty imposed by law as to which matters there was a duty to report,” specifically excludes the use "in criminal cases [of] matters observed by police officers and other law enforcement personnel”. While rule 803 (8) (B) would appear to bar the use of such evidence by the defense as well as by the prosecution, the courts have construed the rule to permit the use of such report by a defendant (United States v Smith, 521 F2d 957 [DC Cir 1975]).
To bar its use by a defendant would defy logic, for "the apparently absolute language of [Federal Rules of Evidence, rule] 803 (8) (B) had its origin in congressional concern that use of reports against defendants would be unfair” (United States v Smith, supra, at 969, n 24; emphasis added). Thus, the court in United States v Smith concluded "that a police report * * * is an exception to the new hearsay rules when introduced at the request of the defense” (United States v Smith, supra, at 969, n 24). Put another way, " '[p]olice reports are ordinarily excluded when offered by the party at whose instance they were made’ * * * but may still be admitted as business records when, as here, they are offered against that party, the prosecution” (United States v Smith, supra, at 967).
DUTY TO REPORT
In order for an out-of-court hearsay statement to be admitted as a business record, it must be demonstrated that the declarant was under a duty to report the occurrence to the entrant (Johnson v Lutz, 253 NY 124 [1930]; Cover v Cohen, 61 NY2d 261 [1984]; People v Wilson, 123 AD2d 457 [2d Dept 1986]).
In the instant case, the declarant was the complainant, a *621 citizen who had no such official duty to report the incident. Thus, admission of the UF-61 cannot be predicated solely upon the business records exception. Nonetheless, even where such hearsay in a business record is not admissible under the business records exception, it is still admissible if it falls within any other exception to the hearsay rule. Thus, "the hearsay recorded by a police officer * * * might be admissible if it was an admission, a spontaneous exclamation, a dying declaration, or a declaration against interest” (United States v Smith, supra, at 964-965; see also, People v Luke, 136 Misc 2d 733 [Sup Ct, Bronx County 1987] [wherein the court allowed the admission of a police department "911 Sprint” tape as a "present sense impression”]). Similarly, a hearsay statement contained within a business record shall be admissible to impeach a witness as a prior inconsistent statement (Howard v United States, 278 F2d 872 [DC Cir 1960]).
CONCLUSION
The description of the defendant in the proffered UF-61 differs from the description given at trial. The court has carefully reviewed the document to otherwise satisfy itself on the question of reliability insofar as it (i.e., the document) pertains to the present case. With the exception of this sole, albeit important inconsistency going to the very heart of the instant application, and mindful of the police officer’s inability to recollect particulars, all said particulars contained as information reported therein — date of offense, name, address, telephone number(s) of victim, victim’s work location, age, date of birth, witness’ name with all appropriate identification(s), property stolen with all particulars, number of perpetrators with descriptions, and full incident description — coincides with uncontroverted testimony elicited from other witnesses as to the facts. It is abundantly clear that the document was prepared in connection with the arrest of Kimani Selassi and that, but for the erroneous signature, would otherwise enjoy a foundation for admissibility.
Nonetheless, in light of the foregoing, the court finds sufficiency. By so doing it does not suggest abandonment of well-established reliance on specific categories of hearsay exceptions in favor of some amorphous "reliability” test. Rather, here, the court’s own exacting review, limited in the context of use by a defendant, sees the document deemed "reliable”; as such it should be admitted for impeachment purposes.
*622 With respect to the fact that the form was not signed by the officer who received the information from the complainant, the court, in again noting the common practice for police officers to sign blank UF-61’s to be filled out by clerical personnel at a later time in their absence and without their review, strongly condemns said procedure; it urges the New York City Police Department to review policy with respect to this untoward practice and to enforce appropriate standards concomitant both with its duty to maintain public order and to guarantee citizen due process.
Moreover, to disallow the defendant to admit the form into evidence solely because the police failed to follow prudent procedures in its completion would be manifestly unfair. To rule otherwise would be to allow the People to benefit from an error of their own making to the extreme prejudice of the defendant. Fair play mandates otherwise. Accordingly, form UF-61 is admitted into evidence.