128 P.3d 119 (2006)
STATE of Washington, Respondent,
v.
Kyle K. KRONICH, Appellant.
No. 23427-4-III.
Court of Appeals of Washington, Division Three.
February 7, 2006.
*120 Tracy A. Staab, Federal Public Defenders, Spokane, WA, for Appellant.
Kevin M. Korsmo, Brian C. O'Brien, Attorneys at Law, Spokane, WA, for Respondent.
BROWN, J.
¶ 1 Kyle K. Kronich appeals his convictions for driving while under the influence (DUI) and third degree driving while license suspended. He contends (1) his breath test refusal should have been suppressed because he was denied an attorney and (2) a Department of Licensing (DOL) record violated Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). We affirm.

FACTS
¶ 2 Deputy Sheriff Jeff Jenkins was behind Mr. Kronich's vehicle at a train crossing waiting for a train to pass. While waiting, Deputy Jenkins checked Mr. Kronich's license plate by radio and learned Mr. Kronich's license was suspended. Deputy Jenkins verified Mr. Kronich's description and then stopped the vehicle. Mr. Kronich exited the vehicle and appeared "lethargic." Clerk's Papers (CP) at 47. His eyes were half-closed and he appeared sleepy and very slow moving.
¶ 3 Deputy Jenkins smelled a strong odor of intoxicants on Mr. Kronich's breath. Mr. Kronich was arrested for driving with a suspended license. Deputy Jenkins saw numerous open beer containers in the car. Mr. Kronich refused a breath test, blood test, and field sobriety tests. Deputy Jenkins completed a DUI Arrest Report box showing, "Attorney Requested?" DUI Arrest Report at 2. Deputy Jenkins checked "Yes." Id. Then, the Deputy filled in "No" in the box, "Attorney Contacted?" Id. Within the "Attorney's Name" box, the deputy noted, "Did not want to call." Id.
¶ 4 Mr. Kronich was charged with driving under the influence of intoxicating liquor and/or drugs and third degree driving while license suspended. Before trial, Mr. Kronich unsuccessfully sought suppression of his breath test refusal, arguing denial of access to counsel. The court reasoned Mr. Kronich accepted the deputy's offer to contact an attorney, but "for some reason Mr. Kronich decided that he didn't want to call anybody." CP at 30. The court concluded he waived his right to access to counsel, noting, "All the State has to do or the law enforcement agency has to do is help provide access." CP at 30. Further, the court reasoned the defense failed to make "the case that total access to an attorney was denied." CP at 31.
¶ 5 During trial, the State admitted a DOL Order of Revocation of Mr. Kronich's driving privileges and a cover letter from the DOL custodian of records, certifying that DOL records indicated Mr. Kronich: "Had not reinstated his/her driving privilege. Was suspended/revoked." Exhibit 2.
¶ 6 Mr. Kronich was convicted as charged. On RALJ review, the superior court affirmed Mr. Kronich's convictions, finding the district court "applied the wrong standard regarding who has the burden of producing evidence in *121 the suppression hearing." CP at 98. But, the superior court concluded, the error was harmless because even without the evidence of Mr. Kronich's refusal to submit to the breath test, substantial evidence existed to show intoxication. Additionally, the superior court concluded admission of the DOL document falls under the public record exception and, therefore, does not violate Crawford, 541 U.S. 36, 124 S.Ct. 1354. This court granted discretionary review.

ANALYSIS

A. Access to Counsel
¶ 7 The issue is whether the trial court erred in denying Mr. Kronich's suppression motion to exclude evidence of his refusal to perform the breath test on the grounds he was denied access to counsel.
¶ 8 In a RALJ review, our focus is error in the district court, not the superior court. State v. Brokman, 84 Wash.App. 848, 850, 930 P.2d 354 (1997). We review legal issues de novo and factual issues for substantial evidence. City of Bellevue v. Jacke, 96 Wash.App. 209, 211, 978 P.2d 1116 (1999).
¶ 9 An arrested driver subject to a breath test must be advised of the Miranda[1] rights and right to access counsel under CrRLJ 3.1. State v. Staeheli, 102 Wash.2d 305, 309, 685 P.2d 591 (1984). "If the defendant requests the assistance of counsel, access to counsel must be provided before administering the test." State ex rel. Juckett v. Evergreen Dist. Court, 100 Wash.2d 824, 831, 675 P.2d 599 (1984). According to CrRLJ 3.1(c)(2): "At the earliest opportunity a person in custody who desires a lawyer shall be provided access to a telephone, the telephone number of the public defender or official responsible for assigning a lawyer, and any other means necessary to place him or her in communication with a lawyer." The remedy for denying the right to counsel is suppression of the evidence acquired after the violation. City of Spokane v. Kruger, 116 Wash.2d 135, 803 P.2d 305 (1991).
¶ 10 In denying Mr. Kronich's motion to suppress, the trial court reasoned under the facts Mr. Kronich accepted the deputy's offer to contact an attorney, but "for some reason Mr. Kronich decided that he didn't want to call anybody." CP at 30. Although the trial court did not make explicit written findings to this effect, this court may look to the trial court's oral decision for interpretation. State v. Motherwell, 114 Wash.2d 353, 358 n. 2, 788 P.2d 1066 (1990). In reviewing a suppression motion denial, we examine whether substantial evidence supports the trial court's findings of fact. State v. Vickers, 148 Wash.2d 91, 116, 59 P.3d 58 (2002).
¶ 11 Here, Deputy Jenkins completed a DUI Arrest Report. On the report, it asks, "Attorney Requested?" DUI Arrest Report at 2. Deputy Jenkins checked the box "Yes." Id. Then, the report asks, "Attorney Contacted?" Id. The deputy checked, "No." Id. Within the "Attorney's Name" box, the deputy noted, "Did not want to call." Id. The DUI report provides substantial evidence that Deputy Jenkins offered access to counsel and Mr. Kronich accepted, but then changed his mind. Mr. Kronich's indecisiveness is not a surprise given the deputy's observation that Mr. Kronich had been drinking, was lethargic, and very slow moving.
¶ 12 Accordingly, substantial evidence shows Mr. Kronich changed his mind about his desire for counsel. While CrRLJ 3.1 requires the State to offer access to counsel, it is not required to force the defendant to accept. See State v. Halbakken, 30 Wash. App. 834, 837, 638 P.2d 584 (1981) (in DUI cases, the State has no duty to provide counsel in the absence of a request). The rule was not violated.
¶ 13 However, assuming Mr. Kronich was denied his CrRLJ 3.1 right of access to counsel, Mr. Kronich would still have to prove prejudicial error. "Because the asserted error is a violation of a court rule (rather than a constitutional violation), it is governed by the harmless error test." State v. Robinson 153 Wash.2d 689, 697, 107 P.3d 90 (2005) (citing State v. Templeton, 148 *122 Wash.2d 193, 220, 59 P.3d 632 (2002)). When a court rule is involved, this court determines whether the error was prejudicial in that "`within reasonable probabilities, [if] the error [had] not occurred, the outcome ... would have been materially affected.'" Robinson, 153 Wash.2d at 697, 107 P.3d 90 (quoting State v. Neal, 144 Wash.2d 600, 611, 30 P.3d 1255 (2001)).
¶ 14 Other DUI evidence exists beyond the refusal. Deputy Jenkins testified he observed Mr. Kronich driving. Upon stopping him for a suspended driver's license, Deputy Jenkins noticed Mr. Kronich appeared lethargic with his eyes half-closed and moving very slowly. As the deputy approached, he smelled a strong odor of intoxicants on Mr. Kronich's breath. Upon searching his vehicle, Deputy Jenkins observed numerous open containers of beer. Within reasonable probabilities, even if the jury did not learn of Mr. Kronich's refusal to perform the breath test, it would have still convicted him of DUI.

B. Public Record Admissibility
¶ 15 The next issue is whether Mr. Kronich was denied his Sixth Amendment confrontation rights under Crawford when the court allowed admission of a DOL record custodian's certification regarding the status of Mr. Kronich's driving privileges.
¶ 16 We review evidence rulings for abuse of discretion. State v. Chapman, 98 Wash. App. 888, 890, 991 P.2d 126 (2000). Discretion is abused when it is exercised without tenable grounds or reasons. State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971).
¶ 17 Mr. Kronich did not object to the DOL document at trial based on Crawford, even though Crawford was decided before his trial. Rather, he objected based on "foundation." CP at 60. The State explained the document was under seal. It was then admitted without further objection. This is unsurprising given ER 902 (document under seal is self-authenticating).
¶ 18 Our Supreme Court recently addressed a similar situation. In State v. Smith, 155 Wash.2d 496, 120 P.3d 559 (2005), Mr. Smith objected at his first degree driving while license suspended or revoked trial to a letter from a DOL custodian of records based on foundation. On appeal, he argued the letter should have been excluded as hearsay. The court of appeals held a DOL letter, certifying information in DOL's database regarding an individual's driving status is a public record. See State v. Smith, 122 Wash. App. 699, 704, 94 P.3d 1014 (2004) (driving record is "a classic example of a public record"). The Supreme Court held the court of appeals should not have reached this issue because Mr. Smith objected at trial to foundation, not hearsay. Smith, 155 Wash.2d at 501 n. 4, 120 P.3d 559. The Court also declined to reach Mr. Smith's unidenited "constitutional questions." Smith, 155 Wash.2d at 501, 120 P.3d 559.
¶ 19 Here, Mr. Kronich raises a constitutional objection. Under RAP 2.5(a), this court declines to address new constitutional issues raised for the first time on appeal unless the claim reflects a manifest error affecting a constitutional right. RAP 2.5(a) was not designed to allow parties a means for obtaining new trials whenever they can identify a constitutional issue not litigated below. State v. WWJ Corp., 138 Wash.2d 595, 602, 980 P.2d 1257 (1999). While our Supreme Court in Smith declined to address Mr. Smith's constitutional issues, we acknowledge Mr. Kronich's confrontation clause issue and consider it in passing because this issue is likely to arise again.
¶ 20 The Sixth Amendment's confrontation clause guarantees a criminal defendant's right to be confronted with the witnesses against him or her. Crawford, 124 S.Ct. at 1359. The Crawford court rejected the reliability test for testimonial statements derived from Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).
¶ 21 Now, a testimonial statement of a declarant who does not testify at trial is inadmissible unless (1) the declarant is unavailable and (2) the defendant had a previous opportunity to cross-examine the declarant. Crawford, 124 S.Ct. at 1369. Generally, testimonial statements are declarations or affirmations made for the purpose of establishing some fact. Id. at 1364. Examples of testimonial statements include *123 pretrial statements the declarants would reasonably expect to be used by the prosecutor, such as affidavits, depositions, confessions, and statements taken by police officers in the course of interrogations. Id. "Business records" are not included in this category. Crawford, 124 S.Ct. at 1367 n. 6; see also 124 S.Ct. at 1378 (Rehnquist, C.J., noting in his concurrence that "the Court's analysis of `testimony' excludes at least some hearsay exceptions, such as business records and official records").
¶ 22 Other jurisdictions have found public records to be analogous to business records. People v. Shreck, 107 P.3d 1048 (Colo.2005); People v. Selassie, 140 Misc.2d 616, 532 N.Y.S.2d 326, 328 (N.Y.Sup.Ct.1988). Adopting this finding, public records, like business records, should not be considered "testimonial" statements for purposes of applying Crawford.
¶ 23 Recently, Division One of this court reached the same conclusion under quite similar facts. State v. N.M.K., 129 Wash.App. 155, 118 P.3d 368 (2005). The N.M.K. court additionally approved the application of ER 803(a)(10) related to admission of evidence in the absence of a public record. Considering the similarity between business records and public records and the Crawford reasoning, the trial court did not err in denying suppression. We reach the same conclusion as did the N.M.K. court.
¶ 24 In sum, because Crawford did not change the law pertinent to admission of nontestimonial hearsay that falls within a hearsay exception, the DOL document here was properly admitted. "To hold otherwise would require numerous additional witnesses without any apparent gain in the truth-seeking process." Crawford, 124 S.Ct. at 1378 (Rehnquist, C.J. concurring). Considering all, we hold the trial court did not err in denying suppression.[2]
¶ 25 Affirmed.
I CONCUR: SWEENEY, A.C.J.
BAKER, J.[*] (concurring in part and dissenting in part).
¶ 26 I concur with the reasoning and result of Part A of the majority's opinion but respectfully dissent as to Part B. Like the majority, I would affirm Mr. Kronich's conviction for driving while under the influence. But, in contrast to the majority's view, I conclude that a challenge under Crawford[1] is fatal to the type of Department of Licensing (DOL) statement made in this case, even when the challenge is made for the first time on appeal. Accordingly, I would reverse the trial court's ruling admitting the DOL statement and, in turn, would reverse the conviction for driving while license suspended in the third degree.

1. Challenge First Made on Appeal
¶ 27 The majority cites RAP 2.5(a) and State v. WWJ Corp., 138 Wash.2d 595, 602, 980 P.2d 1257 (1999), and points out that Crawford was decided prior to Mr. Kronich's trial. The majority then refuses to address the constitutional challenge at all. But I respectfully disagree with the majority's assertion that we should not address a challenge under Crawford just because it is made for the first time on appeal, despite its being a challenge arguably based on a "manifest error affecting a constitutional right." RAP 2.5(a)(3). I reach this conclusion because I see the constitutional challenge made here as being fairly deemed "manifest." Id. The record here is sufficient to determine that, had the Crawford challenge been made at trial, it would have resulted in the exclusion of the DOL employee's testimonial statement. The absence of the DOL statement would, in turn, have been fatal to the State's case on the charge of driving while license suspended. In other words, Mr. Kronich's challenge on appeal is one of manifest constitutional error, and the failure to raise it at trial was not harmless error beyond a reasonable doubt.
¶ 28 I agree that RAP 2.5(a)(3) was "not designed to allow parties a means for obtaining *124 new trials whenever they can identify a constitutional issue not litigated below." Majority Opinion at 122 (citing WWJ Corp., 138 Wash.2d at 602, 980 P.2d 1257). But it is still important to conduct the inquiry as to whether the claimed constitutional error is "manifest" before declining to address it at all. As enunciated in State v. Scott, 110 Wash.2d 682, 687-88, 757 P.2d 492 (1988):
The exception [to the general rule that issues cannot be raised for the first time on appeal] actually is a narrow one, affording review only of "certain constitutional questions." Comment (a), RAP 2.5, 86 Wash.2d 1152 (1976). Moreover, the exception does not help a defendant when the asserted constitutional error is harmless beyond a reasonable doubt. See Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065 (1967).
We disagree, however, that by deciding that an error is not "manifest", an appellate court can usefully shortcut the review process. Even the threshold determination of "reviewability" requires diligent attention to the record. Cf. United States v. Young, 470 U.S. 1, 16, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) ("Especially when addressing plain error, a reviewing court cannot properly evaluate a case except by viewing such a claim against the entire record."). Thus, no appellate effort is saved by cutting off review of those cases in which reversal is determined to be unnecessary.
The proper way to approach claims of constitutional error asserted for the first time on appeal is as follows. First, the appellate court should satisfy itself that the error is truly of constitutional magnitudethat is what is meant by "manifest". If the asserted error is not a constitutional error, the court may refuse review on that ground. If the claim is constitutional, then the court should examine the effect the error had on the defendant's trial according to the harmless error standard set forth in Chapman v. California, supra.

(Footnotes omitted.)

2. Adequacy of Record for Constitutional Review
¶ 29 The test of whether an alleged constitutional error is "manifest" involves, in part, whether the record is conducive to reviewin other words, whether the record itself "manifests"or showsthe constitutional error. State v. McFarland, 127 Wash.2d 322, 333, 899 P.2d 1251 (1995).
¶ 30 Here, the record is readily reviewable on the Crawford principle that "testimonial" statements given in a criminal trial without the opportunity of cross-examination by the defendant violate the confrontation clause of the Sixth Amendment to the United States Constitution. The alleged "testimonial statement" at issue in this case was introduced at trial as Exhibit 2. The record on appeal here, then, is in contrast to some cases where for some reason the trial record is not conducive to an adequate reviewfor example, when a suppression motion implicating the Fourth Amendment was not made and no suppression hearing was held. See, e.g., State v. Baxter, 68 Wash.2d 416, 413 P.2d 638 (1966).
¶ 31 The record here is sufficient for review of the constitutional error raised.

3. Sixth Amendment Violation
¶ 32 The next part of the inquiry under RAP 2.5(a)(3) is whether the error is truly of "constitutional magnitude." McFarland, 127 Wash.2d at 333, 899 P.2d 1251. I would conclude that it is.

a. N.M.K. is distinguishable.
¶ 33 This case is distinguishable from State v. N.M.K., 129 Wash.App. 155, 118 P.3d 368 (2005). There, the language of the DOL "certification" was "that after a diligent search of computer files there is no document or other evidence ... to indicate that ... the [DOL] had issued a valid license to" the defendant. Id. at 163, 118 P.3d 368. Similarly, a post-Crawford federal case on which Division One of this court heavily relied in reaching its decision in N.M.K.the Fifth Circuit case of United States v. Rueda-Rivera, 396 F.3d 678 (5th Cir.2005)involved language in the Immigration and Naturalization Service's records custodian's "certification" substantially similar language to that in *125 N.M.K. The certificate in Rueda-Rivera stated that "after a diligent search no evidence [was] found to exist in the records of the [INS] of the granting of permission for admission into the United States after deportation." Rueda-Rivera, 396 F.3d at 679.
¶ 34 By contrast, in Mr. Kronich's case, the DOL records custodian said in her letter:
[A]fter a diligent search of the computer files the said official record indicates on November 15, 2000, the following statements apply to the status of the above named person:
Had not reinstated his/her driving privilege. Was suspended/revoked.
Ex. 2.(emphasis added).
¶ 35 I would have to conclude that this particular statement is "testimonial," under the meaning of Crawford, for several reasons.

b. Certifying a copy of a record is different from searching for and finding none.
¶ 36 First, at the risk of appearing overly technical, I must admit to finding it somewhat problematic that both N.M.K. and Rueda-Rivera seem to gloss over a distinction that I deem important. That is the difference between when a records custodian certifies a true and accurate copy of an original on filea purely ministerial act if there ever was oneand the process someone must go through when ultimately certifying the absence of a record. The certification of the absence of a record begins with a search that is both diligent and knowledgeable and ends with the testimonial statement. The testimonial statement outlines the actions of the records seeker: that he or she knew for what record to search, knew how to find it in the records or database, searched for it diligently, and found no such record.
¶ 37 In this regard, ER 803(a)(7)the hearsay exception for absence of a business recordappears to require live testimony concerning the absence of records. That rule states:
(7) Absence of Entry in Records Kept in Accordance With RCW 5.45. Evidence that a matter is not included in the memoranda, reports, records, or data compilations, in any form, kept in accordance with the provisions of RCW 5.45, to prove the nonoccurrence or nonexistence of the matter, if the matter was of a kind of which a memorandum, report, record, or data compilation was regularly made and preserved, unless the sources of information or other circumstances indicate lack of trustworthiness.
¶ 38 Karl B. Tegland, in his Courtroom Handbook on Washington Evidence, offers the following thoughts pertaining to ER 803(a)(7).
Although the rule does not specifically require the testimony of a custodian or other qualified witness, some courts have read the requirement into the rule. See, e.g., United States v. Rich, 580 F.2d 929 (9th Cir.1978) [cert. denied, 439 U.S. 935, 99 S.Ct. 330, 58 L.Ed.2d 331 (1978)]. A qualified witness would seemingly be necessary to make a foundation showing that the business routinely kept records of the information not located, and that the information would have come promptly to the attention of regular record keepers and would have been recorded at that time.
5D KARL B. TEGLAND, WASHINGTON PRACTICE: COURTROOM HANDBOOK ON WASHINGTON EVIDENCE, at 406 (2005). And in his earlier treatise, he went on to say, unlike the evidence admissible under [RCW 5.45], evidence admissible under [ER 803(a)(7)] ... will ordinarily be testimonial. 5C KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW & PRACTICE § 803.44, at 28 (4th ed.1999) (citing United States v. Rich, 580 F.2d 929 (9th Cir.1978); United States v. Zeidman, 540 F.2d 314(7th Cir.1976)) (emphasis added).[2]
¶ 39 I acknowledge that ER 803(a)(10) pertaining to the absence of a public record is *126 worded differently from ER 803(a) (7)'s absence of business records rule. ER 803(a)(10) reads:

Absence of Public Record or Entry. To prove the absence of a record, report, statement, or data compilation, in any form, or the nonoccurrence or nonexistence of a matter of which a record, report, statement, or data compilation, in any form, was regularly made and preserved by a public office or agency, evidence in the form of a certification in accordance with rule 902, or testimony, that diligent search failed to disclose the record, report, statement, or data compilation, or entry.
(Emphasis added.) But this may beg the question, for ER 902 is merely a rule for the self-authentication of public documents themselves, and a careful reading of it gives no hint of approval for the method used in either N.M.K. or Rueda-Rivera for establishing the absence of such a document. True, subsections (a), (b) and (d) discuss the "certification" pertaining to records of a state agency apparently referenced in the language of ER 803(a)(10). Yet, nothing approving the N.M.K. type of statement for absence of a record can be gleaned from these subsectionsat least, not without implicating Crawford since the "certifications" would still, effectively, be testimonial. Here is what these subsections actually say, in pertinent part:
(a) Domestic Public Documents Under Seal. A document bearing a seal purporting to be that of ... any state, or... of a ... department, officer or agency thereof, and a signature purporting to be an attestation or execution.
(b) Domestic Public Documents Not Under Seal. A document purporting to bear the signature in the official capacity of an officer or employee of any entity included in section (a), having no seal, if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer has the official capacity and that the signature is genuine.
. . . .
(d) Certified Copies of Public Records. A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with section ... (b) or (c) of this rule.
ER 902 (emphasis added). In other words, nothing in the language of ER 902 would provide any authority for bypassing "testimony" to establish that (1) a search was made, and (2) the search revealed no pertinent record.
¶ 40 But, I do admit that the decisions in N.M.K. and Rueda-Rivera give us license to make what I consider the "jump" from merely certifying the copies of records to certifying the nonexistence of a DOL record. Accepting the holdings in N.M.K. and Rueda-Rivera and applying them to Mr. Kronich's case, if there had been a proper certification not only of a "true copy" of the Order of Suspension but also of the absence of a public record of any reinstatement of Mr. Kronich's driving privilege as of the date in question, Crawford would have been satisfied.
¶ 41 But, as I have pointed out, the facts of Mr. Kronich's case are different from those in N.M.K. and Rueda-Rivera. See discussion in Part 3.a., supra.

c. State v. Smith (2005) is not controlling.
¶ 42 The majority relies on a very recent case decided by our Supreme Court, State v. Smith, 155 Wash.2d 496, 120 P.3d 559 (2005). True, Smith addressed a DOL employee's statement with language virtually identical to the language in Mr. Kronich's Exhibit 2; and, as at Mr. Kronich's trial, and in the Smith trial, the trial court had overruled a "foundation" objection, and the defendant raised an argument on appeal on another basis.[3] But the similarities end there. In *127 Smith, the Supreme Court merely and narrowly held that a trial objection on the basis of "foundation" was inadequate to preserve an issue on appeal based on the hearsay rule. Unlike in the case at bar, in Smith, there was no confrontation clause issue raised by the appellant, much less addressed by our Supreme Court.
¶ 43 The distinctive factual (even conclusory) statement made by the DOL employee both in Mr. Kronich's case and in Smith, does, in my view, create an issue in a Crawford context. The DOL custodian's letter does not say, for example, that her diligent search "revealed no document, record or other evidence of reinstatement," as in N.M.K. or Rueda-Rivera. Instead, she states, in a conclusory way, that defendant "[h]ad not reinstated [his] driving privilege," and that the defendant's driving privilege "[w]as suspended/revoked." Exhibit 2. While, again, I acknowledge that the distinction may be overly technical, it seems to me to be significant. How does this DOL employee conclude that the privilege has "not [been] reinstated"? How does she conclude that the privilege is still "suspended/revoked"? Whatever the actions and thought processes leading up to this statement, it is a testimonial statement.[4]
¶ 44 Another way of looking at the problem is to ask: Is it not a records custodian's role merely to state whether or not there are records or documents in her custody which have been filed since the Order of Suspension, and, if so, to certify a copy of them as true and correct? Or, if we accept the holdings in N.M.K. and Rueda-Rivera, the custodian may apparently go on and "certify" under ER 902 (without being subject to cross-examination) that no such record of any reinstatement was located in her diligent search. Thus, if the DOL employee's statement in Mr. Kronich's case had been in the nature of, "I have searched the DOL database, and no record of reinstatement was located as of `x' date," it would clearly pass the post-Crawford rulings enunciated in Rueda-Rivera and N.M.K. But, since it does not and further because of what the custodian concludes regarding the status of defendant's driving privilege, rather than the status of records in her custody, I would have to conclude that the statement is testimonial in nature. The statement tells us what the records mean, and what the witness concludes from them, not whether there are records or what, if any, records there areor are not. The statement is therefore testimonial, it, therefore, implicates the Sixth Amendment confrontation clause under Crawford.
¶ 45 In conclusion, had there been an objection at trial on the basis of Crawfordwhich was, after all, decided before the defendant's trialI conclude that it would have been error to admit the particular DOL statement at issue in this case.

4. Harmless Error Standard
¶ 46 Because the Crawford issue was not raised at trial, the final step of the inquiry under RAP 2.5(a)(3) is whether the error in admitting Exhibit 2 was harmless beyond a reasonable doubt. McFarland, 127 Wash.2d at 333, 899 P.2d 1251.
¶ 47 In my view, this portion of the inquiry is quite simple on the record before us. Absent trial Exhibit 2, there is no other evidence in the record to suggest that the defendant's privilege to drive was suspended on the date charged. Mr. Kronich could not have been convicted of driving while license suspended without the admission of Exhibit 2. The error of admitting Exhibit 2 at trial was not harmless beyond a reasonable doubt. It was, therefore, "manifest error affecting a constitutional right," and subject to reversal when raised for the first time on appeal. RAP 2.5(a)(3); McFarland, 127 Wash.2d at 333, 899 P.2d 1251.

CONCLUSION
¶ 48 I agree with the majority that Mr. Kronich's conviction for DUI should be affirmed; but I would reverse the third degree *128 driving while license suspended conviction and dismiss that charge, with prejudice.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 444-45, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] The parties motions to supplement the record are granted.
[*] Judge Rebecca Baker is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.
[1] Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
[2] While the holdings in Rich and Zeidman do not address the Sixth Amendment issues here, and while the opinions in those cases do not address the concerns I have about the lack of guidance provided by ER 902, both cases appear to stand for the requirement of at least some form of live testimony in order for evidence of absence of a business record to be admissible. See ER 803(a)(10); ER 902.
[3] In addition, at Mr. Kronich's trial, in response to the foundation objection, the State asserted that ER 902 made the "record" self-authenticating, and defense counsel acceded.
[4] It may also be a legal conclusion, or at least an opinion on an ultimate fact offered by a non-expert, but these are subjects for another day.